[Cite as *State v. Niro*, 2026-Ohio-3067.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,
CITY OF EASTLAKE,

          Plaintiff-Appellee,

- vs -

MEGAN L. NIRO,

          Defendant-Appellant.

CASE NO. 2026-L-0001

Criminal Appeal from the
Willoughby Municipal Court

Trial Court No. 2025 CRB 01708

---

## OPINION AND JUDGMENT ENTRY

Decided: August 10, 2026
Judgment: Affirmed

---

*Jacqueline O'Donnell*, City of Eastlake Prosecutor, 35150 Lakeshore Boulevard, Eastlake, OH 44095 (For Plaintiff-Appellee).

*Cory R. Hinton*, Hanahan & Hinton, L.L.C., 7351 Center Street, Suite 1, Mentor, OH 44060 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Megan L. Niro, appeals her conviction for domestic violence following a bench trial in the Willoughby Municipal Court.

{¶2} Appellant raises a single assignment of error, arguing that her conviction is against the manifest weight of the evidence.

{¶3} Having reviewed the record and applicable law, we find that Appellant's assignment of error is without merit. Appellant has not established that the trier of fact clearly lost its way and created a manifest miscarriage of justice in convicting her of

domestic violence.  Rather, Appellant appears to be attempting to improperly raise a self-defense claim for the first time on appeal.

{¶4}    Therefore, we affirm the judgment of the Willoughby Municipal Court.

**Substantive and Procedural History**

{¶5}    Appellant was convicted of committing domestic violence against her husband, S.N., on August 26, 2025, at their family home in Eastlake, Ohio.

{¶6}    The couple had been separated for nearly two years.  However, they had agreed that on days S.N. worked, Appellant would take their two young children to school and pick them up after school.  That morning, S.N. left for work with the understanding that Appellant would wake up the children and take them to school.  While he was at work, S.N. received several calls from the school because the children did not arrive and no one contacted school officials.  S.N. tried to call Appellant several times but she did not answer.

{¶7}    S.N. left work and drove home.  After he arrived home, S.N. went to an upstairs bedroom and saw that everyone was still asleep.  S.N. woke everyone up and told the children to get ready for school.  Appellant was sitting in a recliner, and she and S.N. began arguing.  S.N. asked Appellant to leave the house three to four times, but she did not.

{¶8}    According to S.N., he kicked the recliner to "kind of jostle" Appellant, i.e., "to get her to get up."  Appellant stood up, and she and S.N. continued arguing.  Appellant pushed S.N., which caused him to knock into one of the children.  Appellant tried pushing S.N. again, at which point she grabbed his neck and scratched it.  S.N. grabbed Appellant's hands to restrain her.  As he did so, he pushed Appellant backwards, causing

her to hit the wall and leave a dent. S.N. pushed Appellant into a bedroom to "get her out of the way." Appellant angrily approached S.N. and took "a couple of swings," striking the right side of his head. S.N. was then able to "break free," at which time he went downstairs and called 911. According to S.N., he sustained scratches to his neck, jaw line, and lower back from Appellant's fingernails.

{¶9} Patrolmen Nagy from the Eastlake Police Department responded to the call. He encountered S.N. sitting in the front yard speaking on the phone with 911 dispatchers. He observed that S.N. had "fresh, red" scratches on his cheek and neck.

{¶10} Appellant exited the residence and began yelling at Patrolman Nagy. Patrolman Nagy advised Appellant to stand by the garage door, but she refused. Appellant used vulgar language, said she was going to leave, and opened the driver's side door of a vehicle parked in the driveway. Patrolman Nagy pulled Appellant out of the vehicle, closed the door, and told her that she was not free to leave. He instructed Appellant to turn around and put her hands behind her back. Appellant did not comply and instead tensed up and her arms and flailed them around. Patrolman Nagy attempted to radio other responding officers for assistance, but he was not able to "key up" his microphone and control Appellant's arms. Patrolman Nagy took himself and Appellant "to ground" to be "able to better control the situation."

{¶11} Patrolman Mastrocola arrived and ran over to assist Patrolman Nagy. The two officers attempted to handcuff Appellant's arms behind her back, but she would not comply. The officers eventually succeeded in handcuffing Appellant. Patrolman Nagy told Appellant that she was under arrest and placed her in the back of his police cruiser.

Case No. 2026-L-0001

Patrolman Nagy transported Appellant to the police department and booked her into jail, while Patrolman Mastrocola stayed at the residence and investigated the incident.

{¶12} Patrolman Mastrocola spoke with S.N. and obtained his statement. The officer observed "fresh red marks" on S.N.'s cheek, neck, and Adam's apple. The officer took photographs of the red marks and had S.N. prepare a written statement. Appellant's parents arrived to take care of the children, and Appellant returned to work.

{¶13} The next day, on August 27, 2025, three complaints were filed in the Willoughby Municipal Court charging Appellant with domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A) (count 1); obstructing official business, a second-degree misdemeanor in violation of R.C. 2921.31 (count 2); and resisting arrest, a second-degree misdemeanor in violation of R.C. 2921.33(A) (count 3).

{¶14} On the same date, Appellant was arraigned and pleaded not guilty.

{¶15} On December 2, 2025, the matter was tried to the bench. The State presented testimony from S.N. and Patrolmen Nagy and Mastrocola. As exhibits, the State submitted the recording of the 911 call and photographs of S.N.'s injuries. After the State's case-in-chief, Appellant moved for acquittal pursuant to Crim.R. 29, which the trial court denied. Appellant rested and renewed her Crim.R. 29 motion, which the trial court denied.

{¶16} The trial court found Appellant guilty on all three charges and ordered her to immediately report to the probation department for a drug screen. Appellant tested positive for cocaine. The trial court then proceeded to sentencing. On count 1 (domestic violence), the trial court sentenced Appellant to 180 days in jail, with 177 days suspended and credit for three days, a $250 fine, and costs. On count 2 (obstructing official business)

Case No. 2026-L-0001

and count 3 (resisting arrest), the trial court sentenced Appellant to concurrent sentences of 90 days in jail with 80 days suspended. The trial court also imposed 12 months of community control.

{¶17} On January 2, 2026, Appellant timely appealed her domestic violence conviction and raises a single assignment of error.

**Assignment of Error and Analysis**

{¶18} Appellant's sole assignment of error states: "The jury's finding of guilt and [Appellant's] subsequent conviction for Domestic Violence was contrary to the manifest weight of the evidence; therefore, [Appellant's] conviction for said charge should be overturned, and [Appellant] should be remanded to the trial court for a determination consistent with this ruling."

{¶19} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25. "[A] reviewing court asks whose evidence is more persuasive—the [S]tate's or the defendant's?" *Id*. In considering whether a conviction is against the manifest weight of the evidence, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 1997-Ohio- 52, ¶ 24, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id*., quoting *Martin* at 175.

Case No. 2026-L-0001

{¶20} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant argues that the trial court should have found S.N. to be the "primary aggressor" and that Appellant's resulting conduct was "justified." According to Appellant, S.N.'s testimony demonstrates that she only struck him in the face after S.N. violently kicked her chair, blocked her in the hallway, and threw her into a wall.

{¶21} S.N.'s testimony indicates that he likely contributed to escalating the situation; however, it does not compel the conclusion that Appellant merely reacted to S.N.'s conduct. In addition, R.C. 2919.25 does not exclude a conduct from a non-primary aggressor. To the extent Appellant is arguing that her actions were legally excused as self-defense, she may not raise that claim for the first time on appeal. *See State v. Myles*, 2013-Ohio-1821, ¶ 15 (2d Dist.)

{¶22} Appellant next argues that S.N. was not injured as a result of her conduct. In support, she cites S.N.'s trial testimony that he did not receive medical attention and that he went back to work.

{¶23} R.C. 2919.25(A) encompasses both "caus[ing]" and "attempt[ing] to cause" "physical harm." Therefore, S.N. did not have to sustain actual injuries. *See State v. Chasteen*, 2025-Ohio-5546, ¶ 21 (2d Dist.) (actual injuries not required for conviction). In addition, "'[p]hysical harm to persons' means *any injury*, illness, or other physiological impairment, *regardless of its gravity or duration*." (Emphasis added.) R.C. 2901.01(A)(3). Therefore, even if S.N. sustained only minor injuries, they qualified as "physical harm."

*State v. Hamrick*, 2017-Ohio-323, ¶ 15 (4th Dist.) (a minor injury constitutes physical harm).

{¶24} Appellant has not shown that the trier of fact clearly lost its way and created a manifest miscarriage of justice in convicting her of domestic violence. Accordingly, Appellant's sole assignment of error is without merit.

{¶25} For the foregoing reasons, the judgment of the Willoughby Municipal Court is affirmed.


MATT LYNCH, P.J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2026-L-0001

## JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignment of error is without merit. It is the judgment and order of this court that the judgment of the Willoughby Municipal Court is affirmed.

Costs to be taxed against Appellant.

JUDGE JOHN J. EKLUND

PRESIDING JUDGE MATT LYNCH,
concurs

JUDGE ROBERT J. PATTON,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2026-L-0001